UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

              File No. 1:11-CR-132

              HON. ROBERT HOLMES BELL

COREY GENE HATHAWAY,

   Defendant.
                 /

**O P I N I O N**

   This matter comes before the Court on Defendant Corey Gene Hathaway's motions to dismiss indictment, to present an entrapment by estoppel defense, and to suppress evidence. (Dkt. No. 27.) For the reasons that follow, the motions will be denied.

**I.**

   Defendant Corey Gene Hathaway has been charged in a two-count indictment with manufacturing over 100 plants of marijuana, and conspiracy to manufacture marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii). Defendant has moved to dismiss the indictment on the basis of his anticipated defense of entrapment by estoppel.

   "A party may raise by pretrial motion any defense. . . that the court can determine without a trial of the general issue." Rule 12(a)(2). The defense Defendant relies on in his motion to dismiss is entrapment by estoppel. "Entrapment by estoppel applies when an official tells a defendant that certain conduct is legal and the defendant believes that official

to his detriment." *United States v. Triana*, 468 F.3d 308, 316 (6th Cir. 2006). The defense of estoppel by entrapment stems from the idea that "[o]rdinarily, citizens may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (quoting *Raley v. Ohio*, 360 U.S. 423, 487 (1959)). The defense of entrapment by estoppel "is based upon fundamental notions of fairness embodied in the Due Process Clause of the Constitution." *United States v. Ormsby* 252 F.3d 844, 851 (6th Cir. 2001). It focuses on the conduct of the government officials rather than on a defendant's state of mind. *United States v. Blood*, 435 F.3d 612, 626 (6th Cir. 2006). The entrapment by estoppel defense is available only under the following circumstances:

> (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair.

*Levin*, 973 F.2d at 467 (citing *United States v. Smith*, 940 F.2d 710 (1st Cir. 1991)); *see also* Sixth Circuit Criminal Pattern Jury Instruction 6.09 (2010). "When this defense is asserted with respect to a federal offense, representations or assurances by state or local officials lack the authority to bind the federal government to an erroneous interpretation of federal law." *Ormsby*, 252 F.3d at 851; *see also United States v. Kidwell*, 217 F. App'x 441, 447 (6th Cir. 2007) (unpublished) (holding that the defendant's reliance on a state court judge's authorization to grow and use marijuana was unavailing since he was charged with a federal offense of cultivating marijuana); *United States v. Brebner*, 951 F.2d 1017, 1027 (9th Cir.

2

1991) ("[I]n asserting an entrapment by estoppel defense to charges of violating federal law, a defendant is required to show reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who, like licensed firearms dealers, has been granted the authority from the federal government to render such advice.")

Defendant is not entitled to dismissal of the indictment on the basis of entrapment by estoppel. First, the representation Defendant relies on was made by Officer Long, a state police officer. Defendant has failed to show that Officer Long made a representation as to federal law, or, if he did, that he had authority to bind the federal government to an erroneous interpretation of federal law. In addition, Defendant merely asserts that Long said there was "not enough evidence of criminal activity to initiate a criminal case." This is not evidence that Long told Defendant that his conduct was legal. Finally, Defendant was growing marijuana before Officer Long's visit, and Defendant has not suggested that he increased the number of plants or otherwise prejudicially changed his position based on Officer Long's representations. Reliance, for purposes of the entrapment by estoppel defense, cannot be based on "retroactive permission" to engage in criminal conduct. *United States v. Lowenstein*, 108 F.3d 80, 83 (6th Cir. 1997). Moreover, Defendant's suggestion that he might have arranged for the removal of the marijuana plants in the three days between Long's visit and the search of his home if Long told him that he was in violation of state or federal law (Def.'s Mot. ¶ 14), does not implicate the fundamental notions of fairness that

are at the heart of the entrapment by estoppel defense. For all these reasons, the indictment is not subject to dismissal on the basis of the defense of entrapment by estoppel. For the same reasons, this is not an appropriate case for presentation of an entrapment by estoppel defense at trial.

## II.

Defendant has argued, in the alternative, that the evidence seized by the government should be suppressed. There is no dispute that the evidence at issue was seized on January 13, 2011, pursuant to a search warrant issued by a Federal Magistrate Judge. (Dkt. No. 40, Gov. Resp., Attach. 1.) There is also no dispute that the search warrant affidavit was sufficient to establish probable cause. Defendant contends, however, that to the extent the search warrant affidavit was based on Officer Long's observations in Defendant's home on January 10, 2011,[1] it was based on information that was illegally obtained. Defendant

---

[1] Paragraph 5 of the search warrant affidavit provides:

On 01-12-2011, I was contacted by Lieutenant (Lt.) Robyn Lynde of the Tri County Narcotics Task Force, in Lansing, Michigan. Lt. Lynde related that on 01-10-2011, at approximately 2130 hours, Officer Mark Long of the Eaton Rapids Police Department went to **206 DIVISION STRRET**[sic]**, EATON RAPIDS, MICHIGAN** regarding a civil complaint. While at **206 DIVISION STREET**, Officer Long made contact with Corey Gene HATHAWAY. Officer Long was invited inside the residence by HATHAWAY. While inside, Officer Long observed approximately one hundred and fifty (150) marijuana plants in the basement. HATHAWAY told Officer Long the plants were his and that he is a Michigan medical marijuana patient and caregiver for five (5) patients. HATHAWAY then told Officer Long he also has some plants at his friend Dustin Allen NORRIS' house at **202 DIVISION STREET, EATON**
(continued...)

contends that although he consented to Officer Long's entry into his home on January 10, his consent was not freely and voluntarily given.

An evidentiary hearing was held on Tuesday, July 19, 2011, at which time the Court took testimony from Officer Mark Long, Officer Jeffrey Smith, and Defendant Corey Hathaway on the issue of Officer Long's January 10 entry into Defendant's house.

The testimony was largely consistent and undisputed as to the following facts. On the evening of January 10, 2011, Officer Mark Long and Officer Jeffrey Smith of the Eaton Rapids Police Department were dispatched to 206 Division Street, Eaton Rapids, in response to a 911 call from Nicole Byrd. Ms. Byrd reported that marijuana was being manufactured inside of the house. When the officer arrived, the house was locked and both Byrd and Defendant were outside. The officers learned that Byrd was Defendant's former girlfriend, that Byrd had previously lived in the house with Defendant, that they had two children together, and that Defendant was not allowing Byrd to retrieve some items from the house. Defendant confirmed that he had marijuana plants in the house, and explained that he was a licensed Michigan medical marijuana patient and caregiver. Defendant showed the officers his medical marijuana growing license and advised that he was teaching classes on how to

---

[1](...continued)
**RAPIDS, MICHIGAN**. HATHAWAY then showed Officer Long some Mason jars and some plastic baggies containing Marijuana. Officer Long said there were approximately 10 mason jars and 10 plastic baggies. Officer Long said HATHAWAY took the marijuana out of one of the mason jars and weighed it with a total weight of 90 grams.

(Dkt. No. 40, Gov. Resp., Attach. 1, Aff. ¶ 5.)

grow marijuana. Defendant was knowledgeable about how to grow marijuana and the Michigan medical marijuana laws. At all times Defendant was able to hold a conversation, appeared to understand what the officers were saying, acted appropriately, and did not appear to be under the influence of alcohol or drugs.

The only area of real divergence in the testimony concerned the manner in which the officers obtained entry into the home.

Officer Long testified that when he asked if they could enter the house, Defendant said he would allow Ms. Byrd to enter the house to retrieve baby items only if Ms. Byrd was accompanied by an officer. After confirming that he had marijuana plants growing in the house, Defendant asked if the officers wanted to see the grow operation, and then said, "well, I guess I have to." Officer Long's impression from this response was that Defendant knew the marijuana laws, and knew that if he had a grow operation he had to allow the officers to walk through it. Officer Long testified that he never told Defendant that he would break down the door if Defendant did not let him in, and he never said that Defendant would have to let them in because Byrd gave them permission to enter.

Officer Smith testified that when they arrived at Defendant's house, he talked to Defendant while Officer Long talked to Byrd. Defendant asked if the officers wanted to see his grow operation, and then invited them into the house. Neither Smith nor Long ever told Defendant that he had to let him in. Defendant showed the officers all the places where marijuana was growing. He was knowledgeable and proud of his work. Officer Smith

explained that he did not obtain a written consent to enter Defendant's house because he was not there for a search and because there were two officers present.

Defendant's testimony regarding the officers' entry into his house differed significantly from the testimony of the officers. Defendant testified that when Officer Long asked if they could enter Defendant's house, Defendant told him he did not want to let them in. Officer Long said he had permission from Byrd to enter, and twice warned Defendant that he would kick the door down if Defendant did not let him in. Defendant opened the door because he did not want the officers to damage his house. Defendant testified that he let the officers in only after he was told he had no choice. When the officers entered the house, they immediately headed toward basement and asked Defendant if he was going to show them the grow operation. That is when Defendant said, "I guess I don't have a choice."

The Court is not inclined to believe Defendant's testimony. It sounded rehearsed, and it was not consistent with the rest of the testimony. Defendant's testimony that the officers threatened to kick the door down is not consistent with all three witnesses' description of a relatively non-confrontational and cooperative atmosphere where Defendant felt free to proudly exhibit and describe his marijuana grow operation. The more credible testimony came from the officers who testified that Defendant allowed them into the house because he wanted them to monitor Ms. Byrd's actions and because he understood it was his duty as a licensed medical marijuana provider to permit them to walk through his grow operation. The officers' testimony is more consistent with all three witnesses' overall description of the

encounter. Based upon the Court's review of all of the testimony, the Court finds that Defendant freely and voluntarily consented to the officers' entry into his home on January 10, 2011. The Court accordingly finds that the information contained in the warrant affidavit was not illegally obtained.

Furthermore, even if the Court assumes that Officer Long did not have valid consent to enter Defendant's house on January 10, such that the search warrant was based partially on tainted evidence, the Court may still uphold the validity of the warrant if the untainted portion of the search warrant affidavit sufficiently supports a finding of probable cause. *See United States v. Jenkins*, 396 F.3d 751, 759 (6th Cir. 2005); *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996). If the Court strikes paragraph 5 and the last sentence of paragraph 9[2] from the search warrant affidavit, there is still ample evidence in the affidavit from which a magistrate judge could find probable cause to believe that evidence of the manufacture of marijuana would be found at Defendant's house. This evidence includes Norris's statement from two months before that Defendant was showing him how to grow marijuana (¶ 6), and Norris's statement on January 12, 2011, that he had several marijuana plants at Defendant's house (¶ 8).

For all the reasons stated above, the Court will deny Defendant's motion to dismiss on the basis of the defense of entrapment by estoppel, deny Defendant's motion to raise

---

[2] The last sentence of paragraph 9 of the search warrant affidavit provides that "[t]his probable cause is based on the observations of Eaton Rapids Police Officer Mark Long on 01-12-2011."

entrapment by estoppel as a defense at trial, and deny Defendant's motion to suppress evidence.

An order consistent with this opinion will be entered.


Dated: July 26, 2011                               /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE